```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

JOSEPH SAWCZAK,

                Plaintiff,

vs.                              Case No.  2:03-cv-612-FtM-29SPC

ALLEN, ROBERT BRIODY, ROBERT VAUGHN,
J. YOUMANS, ACKERMAN and KATHLEEN
KEARNEY,

                Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court upon (1) Defendants' Motion to Dismiss (Doc. #45) filed on behalf of Defendants Allen, Vaughn and Ackerman; and (2) Defendant Kearney's Motion to Dismiss (Doc. #50).[1]  Defendants seek dismissal of Plaintiff's Amended Complaint (Doc. #47) on the grounds that the Amended Complaint fails to state a claim upon which relief can be granted.  Defendant Kearney was previously dismissed without prejudice from this action for the original complaint's failure to state a claim upon which relief can be granted.  See Order dated February 11, 2005 (Doc. #41).  Plaintiff then filed an Amended Complaint (Doc. #47) on May 26, 2005 which again named as Kathleen Kearney as a Defendant.[2]

---

[1]The Court has also examined the allegations in Plaintiff's Amended Complaint  as to Defendants Briody and Youmans, upon whom service has not been effectuated.

[2]This footnote is intended to clarify the procedural chronology in this matter. On January 17, 2005, Defendants  Allen, Vaughn and Ackerman filed a Motion to Dismiss Plaintiff's original filed Complaint(Doc. #32).  Plaintiff filed a Response in Opposition to

(continued...)

Plaintiff filed a Response in Opposition to Defendants Allen, Vaughn and Ackerman's Motion (Doc. #51). On August 14, 2006, Plaintiff filed a response to Defendant Kearney's Motion to Dismiss. This matter is now ripe for review.

**I.**

Plaintiff, currently civilly detained at the Florida Civil Commitment Center ("FCCC"), is proceeding *pro se* on his Amended Complaint filed pursuant to 42 U.S.C. § 1983. The Amended Complaint, in a general and conclusory fashion, alleges Fourteenth Amendment Due Process and Equal Protection violations against the following Defendants: Michelle Allen, the Facility Safety manager at the FCCC; Robert Briody, the Executive Director of the FCCC; Robert Vaughn, the Assistant Director of the FCCC: J. Youmans, the Facility Safety Director at the FCCC; and Kathleen Kearney, who was the Secretary of the Department of Children and Family Services at the time of the events complained of in Plaintiff's Complaint. Amended Complaint, p. 4.

---

[2](...continued)
Defendants' Motion and a Motion to Amend his Complaint with a proposed Amended Complaint on February 10, 2005 (Docs. #39 and #40). Plaintiff served Defendants with a copy of his Amended Complaint at that time. The Court did not grant Plaintiff's motion to amend his complaint until May 26, 2005 (Doc. #46), which mooted Defendants' originally filed Motion to Dismiss. Defendants, however, filed the Motion to Dismiss *sub judice* on March 24, 2005 (Doc. #45), after being served by Plaintiff with a copy of the Amended Complaint, but prior to the Court granting Plaintiff's Motion to Amend.

The facts, which at this stage of the proceedings are assumed to be true, are set forth in nine sequentially numbered paragraphs as follows:

> Plaintiff was ordered by Defendants Youmans and Allen to "E-Dorm" (which Plaintiff describes as a form of "solitary confinement") for "allegedly being in possession of homemade alcohol." Complaint, p. 5, ¶2.
>
> All of Plaintiff's personal property was taken from him, except "bedding items, limited cosmetic items, and the clothes he was wearing." Id. ¶4.
>
> Plaintiff's cell was "filthy." "Food was splattered on the walls." Plaintiff was "not afforded cleaning supplies." And, "Plaintiff was subjected to extremely hot temperatures" because there was "[n]o air ventilation due to the air conditioner not working." Id. ¶5.
>
> Defendant Ackerman "was responsible for assessing the Plaintiff's level of risk" and "responsible for Plaintiff's continued confinement for eight (8) days." Id. ¶6.

Plaintiff's Amended Complaint references Exhibits A-D, which are attached to the Amended Complaint. Exhibit A is a FCCC Resident Communication Form. Plaintiff checked the box marked "Resident Concern" and dates it September 17, 2002. Plaintiff states that he was "unjustly placed[d] in confinement" without due process and subjected to hot temperatures. The staff response, which is signed by D. Doubleday and dated September 20, 2006, states that "homemade alcohol is prohibited and could jeopardize facility safety and security." Further, the response states that Plaintiff was "placed in secure management for safety reasons as it was believed [Plaintiff] might harm [himself] or others." Exhibit B is a FCCC

Resident Communication Form dated October 24, 2002 in which Plaintiff marked the box "Complaint" and again complained about the above incident and complained about his personal property being "seized." Staff member D. Doubleday again responded reiterating the previous response provided to Plaintiff on September 20, 2002 and also advised Plaintiff that "Your property was inventoried and stored for its safekeeping." Exhibit C is a FCCC Resident Communication Form dated October 30, 2002 in which Plaintiff marked the box "Grievance" and again complained about the above incident. Robert Vaughan responded on behalf of FCCC Staff on November 2, 2002 and stated that "Upon being placed on secure management status [Plaintiff] received written notice of the reason and that clinical assessment would be involved in moving [Plaintiff] off that status." Exhibit D is a FCCC Resident Communication Form dated December 6, 2002 in which Plaintiff marked the box "Request for Executive Director Review of the Grievance" and again complained about the above incident. Attached to the Form is a FCCC Response to Grievance dated February 10, 2003 which states "proper FCCC procedures were followed in placing you in, and removing you from, secure management."

The Amended Complaint claims that Plaintiff "was not afforded due process of law, he was treated different than other civil detainees, and was subjected to cruel and unusual punishment." Amended Complaint at p. 6, ¶9. Plaintiff seeks compensatory damages for "emotional and physical injuries" as well as punitive damages

from Defendants. Id. at p. 8.  The Amended Complaint does not contain any allegation that Plaintiff sustained any physical injuries in connection with the incident to which he complains.

**II.**

In deciding a motion to dismiss, the Court must accept well pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiffs. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).  A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(*en banc*).  To satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

However, the Eleventh Circuit imposes "heightened pleading requirements" for § 1983 cases which involve individuals entitled to assert qualified immunity. Swann v. Southern Health Partners,

Inc., 388 F.3d 834 (11th Cir. 2004)(citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)). The heightened pleading standard is not otherwise applicable. In particular, "the complaint must allege the relevant facts with some specificity." Gonzalez, 325 F.3d at 1235 (internal quotations omitted). "'[M]ore than mere conclusory notice pleading is required . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague an conclusory.'" Id. (quoting Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984)). Rather, a complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts if proved, will overcomes the defense of qualified immunity." Id. (quoting Veney v. Hogan, 70 F.2d 917, 922 (6th Cir. 1995)). Unsupported conclusions of law or of mixed law and fact in a complaint will not be accepted by the court. Marsh, 268 F.3d at 1036 n.16. Additionally, the court affords "official conduct a presumption of legitimacy." Gonzalez, 325 F.3d at 1235 (quoting United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991)).

### III.

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under

color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d at 1059; Swint v. City of Wadley, Ala., 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a §1983 action. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-692, 98 S. Ct. 2018, 2036 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).

**IV.**

By way of background, the State of Florida enacted the Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act ("Jimmy Ryce Act"), FLA. STAT. §§ 394.910-.913, by which a person determined to be a sexually violent predator[3] is required to be housed in a secure facility "for

---

[3]A "sexually violent predator" is defined by the Act as any person who:

> (a) has been convicted of a sexually violent offense; and
> (b) suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for log-term control, care, and treatment.

(continued...)

control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." FLA. STAT. § 394.917(2). The Jimmy Ryce Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002). See also Kansas v. Hendricks, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive).[4]  Thus, involuntary commitment of sexually violent predators under the Ryce Act is accomplished by a civil, rather than a criminal proceeding. The state legislature, in its statement of "findings and intent," said that the Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, FLA. STAT.)" FLA. STAT. § 94.910 (2000).

Residents at the FCCC are considered "totally confined" and therefore are subject to internal regulations much like those established by the Florida Department of Corrections. See FLA. STAT.

---

[3](...continued)
FLA. STAT. § 394.912(10) (2002).

[4] "Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects. See Kan. Stat. Ann. § 59-29a01-a20 (Supp. 2001)." Westerheide, 831 So. 2d at 99 n.6.

§ 394.912(11). A person who is civilly committed is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001)(in that "the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments"). Consequently, the Court concludes that persons at the FCCC who are civilly committed have at least the constitutional rights possessed by a prisoner.

**A.   Due Process**

It is unclear on what factual basis Plaintiff's due process claim is predicated in connection with his placement in confinement for eight days. Plaintiff states only that he "was not afforded due process of law" but does not specify how his due process rights were violated. The attachments to Plaintiff's Amended Complaint make clear: (1) that Plaintiff was appraised that he was being confined for being in possession of homemade alcohol (Amended Complaint at p. 5, ¶2 and Exhs. A-C); and (2) that "clinical staff would be involved in moving [Plaintiff] off [secure management] status" (Id. at Exh. C). It is clear from the attachments to the Amended Complaint that the FCCC prohibits alcohol because officials believe "it could jeopardize facility safety and security." (Id. at Exhs. A-B.) Further, it is apparent that Plaintiff's confinement was based on the FCCC officials' belief that Plaintiff "might harm [himself and/or others." (Id. at Exh. B.) Here, the Amended Complaint contains no factual allegations that Plaintiff's

placement in secure management confinement was "punishment" as opposed to a managerial decision to ensure facility security.

"Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Bell v. Wolfish, 441 U.S. 520, 537 (1979). Whether a particular restriction is considered punitive is determined by whether the restriction imposed is for the purpose of punishment or whether it is incidental to some other legitimate governmental purpose. Id. at 538. Restrictions imposed in order to manage a facility or maintain security are examples of permissive restrictions. Id. at 540.

Thus, the Court finds Plaintiff's temporary confinement for eight days was not punitive and did not trigger Plaintiff's due process rights. Sandin v. Conner, 115 S. Ct. 2293 (1995); Youngberg v. Romero, 457 U.S. 307 (1982); Sheley v. Dugger, 833 F.2d 1420 (11th Cir. 1987). Consequently, the Amended Complaint fails to state a claim for violations of Plaintiff's due process rights.

**B.   Eighth Amendment**

Plaintiff claims violations of the Eighth Amendment with respect to the conditions of the cell in which Plaintiff was temporarily confined for eight days.[5] The "cruel and unusual punishment" standard, which originally proscribed barbarous methods

---

[5] Plaintiff's rights as a detainee arise from the Fourteenth Amendment, though the case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is analogous. Cook *ex. rel* Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005). See also Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985).

of punishment, has evolved to reflect society's "standards of decency." Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981); Estelle v. Gamble, 429 U.S. 97, 102 (1976). The court employs a two-part analysis in determining whether the conditions of a plaintiff's confinement violates the Eighth Amendment. Hudson v. McMillan, 503 U.S. 1, 8 (1992). First the condition must be objectively and sufficiently serious or "extreme" to show that it "pose[s] an unreasonable risk of serious damage to [a plaintiff's] future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). Second, plaintiff must come forward with some factual allegations to show that the defendant official "acted with a sufficiently culpable state of mind." Id. (citing Hudson, 503 U.S. at 8). Negligence is not enough. Chandler, 379 F.3d at 1289. Rather, a plaintiff must show the defendant acted with "deliberate difference." Id. Significantly, a defendant must: (1) have subjective knowledge of a risk of harm; (2) disregard that risk; and (3) engage in conduct that rises above mere negligence.

Here, Plaintiff alleges only that the conditions to which he was subjected were uncomfortable and unsanitary. No where does Plaintiff even suggest that the conditions posed any threat to this health or safety. Admittedly, Plaintiff "need not await a tragic event" in order to seek relief. Helling v. McKinney, 509 U.S. 25, 33 (1993). Plaintiff neither alleges nor suggests that the hot temperatures to which Plaintiff was subjected were intentional. In fact, Plaintiff concedes that the hot temperatures were caused by

the "air condition not working." Amended Complaint, page 5, ¶5. Nor does Plaintiff allege that he asked for cleaning supplies and was denied cleaning supplies. While the Court may find the conditions that Plaintiff describes offensive, it does not objectively find that these conditions were so "extreme" as to have posed an "unreasonable risk of serious damage" to Plaintiff's health or safety. Chandler, 379 F.3d at 1290 (pointing out that Eighth Amendment violations should not be found upon a judge's subjective views).

**C. Equal Protection**

Finally, Plaintiff's claim of an equal protection violation is equally flawed. Equal Protection "does not require that all persons be treated identically." Hendking v. Smith, 781 F.2d 850,, 851 (11th Cir. 1986)(citing Stanton v. Stanton, 421 U.S. 7, 14 (1975)). Rather, it requires that "similarly situated persons be treated equally." City of Clebrune v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Conclusory allegations of disparate treatment or personal belief of discriminatory intent is insufficient. GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998). Plaintiff, in a wholly conclusory fashion, claims he was subject "to unequal treatment" but fails to provide any facts as to how he was treated differently than any other FCCC resident to sustain an equal protection claim under federal law.

ACCORDINGLY, it is

**ORDERED AND ADJUDGED:**

1. Defendants' Motion to Dismiss (Doc. #45) filed on behalf of Defendants Allen, Vaughn and Ackerman's is **GRANTED** and Plaintiff's Complaint is **DISMISSED** without prejudice as against Defendants Allen, Vaughn and Ackerman.

2. Defendant Kearney's Motion to Dismiss (Doc. #50) is **GRANTED** and Plaintiff's Complaint is **DISMISSED** without prejudice as against Defendant Kearney.

3. Plaintiff's Complaint is **DISMISSED** without prejudice as against Defendants Briody and Youmans.

4. The **Clerk of the Court** shall: 1) enter judgment accordingly; 2) terminate any pending motions; and 3) close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___1st___ day of September, 2006.

_____
JOHN E. STEELE
United States District Judge

SA:   hmk

Copies: All Parties of Record